Good afternoon, ladies and gentlemen. This is the time set for a re-hearing on Bank and Wolfson v. Concannon. Council, you may proceed. May it please the Court, my name is Anita Milanovich, counsel for Randolph Wolfson, plaintiff-appellant in this case. Insofar as it is possible and proper, I would like to reserve five minutes of my time for rebuttal. Manage your own time. The recent Supreme Court decision in Yulee v. Williams established two principles for this Court to follow. First, strict scrutiny applies to all judicial candidate speech restrictions, regardless of the speaker. In Yulee, the Court instructed that speech about public issues and the qualifications of candidates for elected office command the highest level of First Amendment protection. Second, the ability to announce one's views is highly protected speech under the First Amendment that no cognizable interest can overcome. Judicial speech restrictions that limit a judicial candidate's ability to announce his views on disputed legal and political issues fail strict scrutiny, while judicial speech restrictions that have no impact on a judicial candidate's ability to announce his views may survive strict scrutiny. Which provisions of the Arizona Code, in your view, impact the ability of a candidate to announce his position on issues? And let me just run through them. The solicitation clause, does that deal with the ability to announce your position? Under Yulee, no. How about the fundraising clause? I would have to look at the clause more specifically. Well, it's one of the ones that issue in this case. Yeah, okay. Well, and I have designated them differently than you are, Your Honor, so my apologies. Okay. But the ones where you may ask other people for funds for things other than your campaign, raising funds for organizations, et cetera. Well, insofar as you want to participate in other candidates' campaigns, which is that issue here, insofar as you want to participate in ballot issue campaigns, insofar as you wish to endorse another candidate, those would be circumstances where announcing your views would come into play. Well, I'm still asking, how does it prohibit announcement of your views? There's a judicial ethics opinion that says that a judicial candidate or a judge may announce his or her views on an initiative. You may say, I'm in favor of it or I'm against it. So I'm trying to figure out how it impacts your ability to announce your views if you are prohibited from fundraising or solicitation or participating as a part of the campaign. Well, in Arizona, the judicial races are partisan. And so if a judicial candidate is able to participate, as Mr. Wolfson wishes to participate in other, in his case, Democrat candidates' campaigns, that for him is a means by which he is able to also announce his views, perhaps as a shorthand. Rather, you know, there are many ways to announce your views. He can say he's a Republican or a Democrat. Nobody prevents him from saying that. Nobody pronounces him during the campaign from announcing his views under White on various issues. Correct? Well, I would disagree insofar as an opportunity to participate in another candidate's campaign and certainly, more specifically, as relates here, participate in another on issue. All right. Can a sitting judge do that? Or put it another way, is there a compelling interest in not having a sitting judge do that? I think that the Let's say it's not a campaign. Just, you know, the day after the campaign. Certainly. So now we have a sitting judge who is not trying to get himself, him or herself elected. Right. I would still say that their participation would be a form of announcing their views, which the Court has recognized, regardless of speaker, is protected under the First Amendment. What about the, if I were to analyze your arguments, I think your strongest argument has to do with being able to express an opinion on a ballot initiative. But apparently, I think, and I'm going to ask the State about this after, but do you expect a non-judicial candidate from expressing his opinion on a ballot initiative? Can they express their opinion on a ballot initiative? You're saying a non-judicial candidate? Yes. But a judge. Yeah. Your client. Your client. Oh. Can they announce their views on a ballot issue in any other context? Certainly. Suppose a referendum is going to improve the juvenile justice system in Arizona. Can your client say, I support that? Presently, yes. As a, he's. What about if he becomes a candidate again for judicial office? Then can he? So if he becomes a judicial candidate, I would contend that, yes, he also would be able to. But what does the Code of Ethics allow? I see. My apologies. Under the Code of Ethics, he would not be permitted to. Well, that's what I'm asking. How can you say that? Hasn't the Judicial Conduct Commission, a branch of the Supreme Court and also a constitutional body in Arizona, issued an ethics opinion that says that judicial candidates can announce their positions on ballot propositions? Well, the provision, the advisory opinion that you're referencing, which is Advisory Opinion 96-09. Yes. Yes. The question that was asked, is it appropriate for a judge to appear in a television advertisement endorsing a ballot proposition the judge was involved in drafting? And the answer was no. It is not. Didn't the Conduct Commission, subsequent to your first lawsuit, issue an opinion that said that candidates, judicial candidates, could announce their positions on ballot propositions, not engage in the campaign, but announce their positions? Yes? That may well be true. Isn't it true? I don't. I do not know it to be true or false. I'm just not aware of that decision. Okay. Counsel, could I turn to another question? Of course. You started by saying that strict scrutiny applies and that that's clear after Williams-Yulee. And I wonder if that's true. In view of Justice Ginsburg's concurring opinion, in which Judge Breyer also concurred, that said that a lesser standard should apply. So what do we do? Do we take the four who said strict scrutiny? Do we go with the two concurring who said something less should apply? How should we analyze that? Or maybe you could add the four and the three and get seven, all of whom agree that strict scrutiny applies. And I think you have the right of it, Judge O'Scanlan. I think that is correct. I know it's a little bit of head counting. But at the end of the day, insofar as the strict scrutiny issue is concerned, we do have a majority of the Court holding that strict scrutiny is the standard of review for these provisions. If you count dissenters, right? Correct. And that's not entirely clear, though. You count dissenters, is it? And in Mark's analysis? We're hearing a case on Mark, actually, tomorrow on that very issue. So it's a prelude. Sure. So, well, and under Mark's, to my recollection, the Court is looking at that decision deals with what is the holding of the case. And so in order to determine which position is the holding of the case, you go to the narrowest position that is held. Now, the dissenters. In the majority, arguably. That's the problem. Pardon me? The problem is that if you read Mark's literally, it says in the majority. Right. And this is going to be dealt with tomorrow. I see. Well, my position, obviously, it sounds like there's a dispute on this. You might want to watch our argument tomorrow. Sounds like it would be very worthwhile. Yes. It was a trick question. It wasn't intended to be a trick question, but I think it's one that we have to grapple with. But your position is strict scrutiny across the board, is that right? Yes, that is correct. So you interpret Mark's and that's what you think we need to do. That is correct. Is that because of Williams-Yulee or is that because of Mark's? I believe it is. How do you get there? I believe that is true because I guess it would be true because the Yulee decision, and I guess I would count and consider all the justices and their opinions, whether they be concurrences, plurality or dissent, and looking at them in their totality, we have a holding of the majority of the court that strict scrutiny is the standard of review. So you're including the dissenters. Yeah. Assuming that's right, assuming that it is strict scrutiny, did the Supreme Court really apply strict scrutiny in Yulee? It said stuff like we give substantial deference to the state's judgments and we give with the, they'll know where to draw the lines. That doesn't sound like traditional strict scrutiny to me where we're looking for the most narrowly tailored means. How do you combine those two parts of the test in Yulee? There certainly is language, I think, in the Yulee decision that seems to suggest that although in name strict scrutiny is what's being applied, that perhaps the analysis might be a little bit more fluid, a little less rigorous. But I think that the court did that, allowed some of that fluidity because it was a distinction, a difference between legislative races versus judicial races. And so in order to account for that distinction, it attempted to, it permitted more deference to the state than might otherwise be. Well, the distinction is based on the compelling interest in maintaining an impartial judiciary, isn't it? That's why there's a difference between electing legislators versus judges. Well, that would be true as to the interest of impartiality. But this court was not looking, I mean, that was Republican Party versus White, which addressed impartiality. But I think the court plurality. Don't think that that's a compelling interest here that we ought to recognize in deciding the constitutionality of these provisions? Oh, I certainly do. I think there are two interests now. And as a result of Yulee, Yulee does not overturn or vacate or somehow negate what occurred in Republican Party versus White. It still is true that there is a compelling interest in impartiality that must be demonstrated through narrow tailoring. And if strict scrutiny applies, it passes muster in this case. This is one of those unusual cases where the label does not foretell the result. I think the Court has said that it is a rare case that does survive strict scrutiny, as we've seen with Yulee. But Yulee was such a case, was it not? That that can occur. That can occur. There is that possibility, certainly. In your supplemental brief, and I'm looking at page 8, do I read your supplemental brief at page 8 to concede that if Arizona's interest in the integrity of its judiciary are as broad as Florida's interest, then the regulations you are challenging are constitutional under Williams-Yulee? I don't know how I can say otherwise. If Arizona's interest is identical to that analyzed in Yulee, and Florida's interest that was asserted there, the language of the solicitation clauses is substantially similar. Okay. So I'm getting that right. But so then I would have to say why is this one different? Well, we would argue that the difference here. Because I'm assuming you're not saying rule against me right here. No, I'm not, Your Honor. You've got that correct. The distinction, though, is that we don't view the interest that Arizona advances, though labeled public confidence in the integrity of the judiciary, to be identical or mean the same thing. Well, it certainly subsumes impartiality. It might be broader than impartiality, but you'd think integrity and public confidence include impartiality, no? I guess. What distinction are you making, I guess, is the question. The distinction is that when you look under Florida's ethics rules, the definition of integrity turns or depends on fear or favor. When you look at Arizona's public confidence, protect the integrity of the judiciary, it turns on different criteria. What different criteria? The different criteria. Is this the fitness for office, the three that you mentioned in your brief? Correct. So how are these materially different? I just struggled with this part of your brief. I just joined my colleagues in telling you I struggle to see any material difference. Well, I think there is a difference between being watchful for favors that a judge might incur or might owe and being watchful for a judge's ability to be honest, for example. So the three that you mentioned are honesty, temperament, and fitness for office. Correct. And so to get to Judge Berzon's question, or perhaps it was Judge Rollinson's question, or maybe we're all answering the same things, aren't those subsumed in integrity? How is it different? Well, they must be. I mean, I believe that they are different. And interestingly, if you look at the California Ethics Code, by way of example or contrast, they state in their commentary to their Canon I that the integrity and independence of judges depends in turn upon them acting without fear or favor. So that sounds very much like Florida. Can I ask a question? And then defines integrity to mean probity, fairness, honesty, uprightness, sounding very much like Arizona. And so if they mean the same thing, it's peculiar to me that they would distinguish them. But all of this rests on a position that unless it's the same as Julie, it's therefore no good. Correct. I mean, ultimately, unless there is a meaningful distinction. It's no good. Unless there's a meaningful distinction in the State's definition of integrity or public confidence in the judicial integrity between what Florida asserts and what Arizona asserts. No, but I'm asking a different question. Is it the case that the only way one can justify a restriction on speech during a judicial campaign is if it goes to the particular interest that was upheld in Julie, as opposed to, for example, a broader interest in public confidence in the judiciary? Is that what you're arguing? Yes. That's the only possible interest. There's no other possible interest. Does Julie speak? I thought Julie spoke to the importance of preserving public confidence in the impartiality of the judiciary. That was the interest that was recognized in Julie. That interest, as reflected in Arizona's code, looks different than that that was considered in the court. That leads to my question. Is the — must the interest be expressed in the code, as opposed to the State now coming forward with an interest that we all agree is compelling because the Supreme Court has told us so? Well, I would argue yes. If you look at the language of Julie, when they arrive at — when they get from public interest in the integrity — or, excuse me, the public confidence in the integrity of That's what's in the Florida code. But what — oh, sir, what case do you cite for the proposition that the State's compelling interest must be expressed in the statute, for example, that enacts the restriction, as opposed to the State merely coming forward with a compelling interest when challenged? I don't think that there's any statute or rule that says that the State must articulate in writing what their compelling interest or their interest is for passing any law. However, if they do identify that interest, it's a little disingenuous to, in my view, to say that actually means something else. Well, counsel, let me — you're acting as if the different codes were all passed by the same legislature, so that if they phrase it one way in one statute and another way in another statute, they must have meant something different. But these are independent bodies in different states. And can't they be expressing the same basic thought in completely different language and still mean essentially the same thing? Well, I think a lot of these canons come from model rules from the ABA. And each state, of course, adopts or chooses to adopt whatever language they wish, perhaps from those model rules, perhaps not. But I'm talking about the statement of interest. Can't they, you know, get flowery in their own way and still be getting at the same state interest? Certainly. So if they differ from each other, I think that we ought to — it must mean something for them to make a distinction. Why? Because they're different states acting independently. What you say is a canon that we impose as a fiction when it's the same legislative body passing two different statutes. But why would we apply that same canon when we're dealing with California, Arizona, Florida, Nebraska, wherever? Why would that even come into play? Why don't we just look at it holistically and say, what is it that they're trying to tell us? What in general are they trying to get at? Well, the Court is certainly welcome to do that. I believe it's — as we've articulated in our brief, we believe there is a meaningful distinction among the states in choosing the language. Let me ask you what exactly your — as to the other provisions, not the personal solicitation one, what exactly are you arguing for? Are you arguing that they should be able to go on TV and support a ballot proposition? Are you arguing that a sitting judge should be able to go on TV and support a ballot proposition? Are you arguing they should be able to go on TV and, say, vote for the governor, either a candidate who isn't a judge or a judge? What exactly is your position? Our position is any opportunity that a judge has to announce their views ought not be regulated, cannot be regulated, because it does not satisfy the state's interest, cannot satisfy — So if I want you to go on TV and say vote for President Obama, that would be fine? Yes, Your Honor. What if a judge says vote for the prosecutor? Or the sheriff? Those certainly do potentially present more of a concern. But the interest — but these rules are not limited that way. They're not tailored that way. Well, I understand. But now you're arguing over breadth, and that's a separate issue. But as to those two, would the state have an interest in prohibiting it, a sufficiently compelling interest in prohibiting it? I would think that a judicial candidate that wanted to endorse the district attorney or wanted to say — or support the sheriff, that would probably be — I think that could be regulated. So then we have to go case by case. It just depends on — you know, because your client wants to endorse people for, what, Congress, for Senate. You know, I mean, he kind of wants to be out there and be a power broker in his party and have all of that lined up, right? No, I don't think it necessitates a case by case. All it simply necessitates is that the state craft their rules to address the real issue. But isn't there a separate interest in keeping the judiciary out of politics directly because of the different roles of the judges and the rest of the political system? I'm thinking of sitting judges, but I understand that there seems to be an assumption that whatever applies to sitting judges applies to candidates. But let's think about sitting judges. Is there not a strong state interest in having sitting judges not appear to be part of the legislative process or the executive process, but rather to be deciding or rather have a role or a hat or a veil that says we're not part of that? Well, that is why the Court has said that there is a compelling interest in impartiality. I'm not talking about impartiality in the sense of being impartial between the people who are in front of you. I'm talking about a role or a structure. Is there not a compelling interest in that? I think the compelling interest that we have before us today are those that have been recognized by the Supreme Court. But that's because that's what was before the Court. That doesn't mean that we have our hands tied behind our back in terms of saying what's a compelling interest. So you're asking then if there can be a compelling interest in … from the political system in general. Not in their own campaigns, but as to the rest of the world. I would say no. I don't know how you would be able to navigate that if on the one hand, as Arizona has done, you have said you can run as a partisan candidate, as a judicial candidate. Right, while you're running. And then the next day suddenly for perhaps until you choose to announce your candidacy again, you suddenly are buttoned down. But the general understanding, the general practice, the way we have understood the judicial system, whether it's an elected judge or not. Hasn't it been? I think that judges are free to do what they will or will not and have an understanding of their own what it means to uphold their role as a judge. And they certainly are free to do that. The issue here is the First Amendment right. What do you make of the discussion in Williams-Uly about the difference between judges and traditional politicians? What do you make of that discussion then? Well, I think insofar as that is true, I think that discussion was relevant to the court, both in Republican Party v. White and in the Uly decision, by recognizing a compelling interest both in impartiality, due process over here with White, and then also in Uly by recognizing a public confidence in the integrity of the judiciary. But it really circles back to Judge Berzon's question because if you're talking about Uly, if you're talking about White, then you're talking about involvement in a judicial candidate's own campaign. But in subparts two through five, we're talking about, Arizona's talking about, keeping judicial candidates or sitting judges out of trying to influence campaigns of others. Isn't that a very important distinction? I think that's what Judge Berzon is trying to get you to respond. And if she's not, I am. I would like you to address that. Certainly. And I actually don't think that is a meaningful line to draw, whether we're talking about a candidate's own campaign or another candidate's campaign. But why not? I think the line is announcing one's views, the opportunity. But, counsel, the White one talks about the importance of allowing a candidate to speak out on his and the importance of a robust election debate. And the public has an interest in that as well. But it's very different if judges are seen by the public as trying to influence the outcome of other elections. That is an important distinction. And you don't seem to want to address it. There's something to be said about preventing judges from appearing to be power brokers or trying to trade on the prestige of their office or being in a position to endorse someone and perhaps the optic that that might appear that a favor is owed in return. Would you address that? Certainly. But I think the optic of a favor being owed in return actually is at its greatest risk in scenarios that are not even addressed in these rules. Where another candidate might participate in a judicial candidate's campaign, that is more likely to create an environment of favor. Is that a problem of under-inclusiveness? Yes, it is. Didn't the court tell us in Williams-Uley not to worry about that? If the rule didn't prohibit as much speech as it possibly could, we shouldn't concern ourselves with that? No, actually, I don't read it that way at all. And I'll just quote from the. . . You sure seem to say that. No, I think what the court made clear with under-inclusivity is that when you're looking at what the law does and doesn't do, and I'm just going to quote this language here to help make my point. In Uley 1670, page 1670, it says, Under-inclusivity creates a First Amendment concern when the State regulates one aspect of a problem while declining to regulate a different aspect of the problem that affects its State interests in a comparable way. And so the court's concern there with under-inclusivity was not that it doesn't matter or it's not important anymore, but rather that it needs to be we need to be comparing oranges to oranges. But it also said although a law is under-inclusivity raises a red flag, the First Amendment imposes no freestanding under-inclusiveness limitation. Didn't Justice Roberts say that? Certainly. But then we have the subsequent decision in the Gilbert case that we offered to the Court that again found that the law there, which dealt with regulation of signs, was under-inclusive and therefore failed constitutional review. And so, again, and at the Court there, if you look, comparing — Well, so I got the message on Gilbert. So do you want me to follow, you know, that's — I'm not — I'm not doing Gilbert again since I got reversed on that. My apologies, Your Honor. I wasn't clear on your position on one thing, and I want to — I probably misled you. The Code of Judicial Conduct in Rule 4.1 — I'm looking at A5 now — says that you may endorse an initiative, that somebody running for office may express their opinion about an initiative, may say, I'm in favor of it or against it. And the comments to the Code say the same thing. Is it — in light of those, is it your position that your client could not tomorrow say, I'm in favor of the — announce that he is in favor of a particular ballot initiative in Arizona? I was pointing you to the — I was talking about an opinion, and I should have said the actual language of the Code, which was amended after your client brought his first lawsuit. Okay. And just so I'm clear that I know what I'm responding to — Look at Conduct Rule 4.1, Comment 14, and look at 4.1A5 and see if they don't cover that situation. And I'm not expecting you to do it now. You'll be back on — You're down to two minutes, so why don't you take a look at that and then respond on rebuttal. I do. Thank you for that, Your Honor. Thank you. Just take a look while — during the — and respond on rebuttal. Oh, of course. I'll return to the question then. Yes. Absolutely. Thank you, Your Honor. I'll reserve the rest of my time. Yes. Good afternoon. May it please the Court. I'm Paula Bickett, and together with Kim DiMarci represent the defendants in this matter. I just wanted to clear up a few things in the beginning. Judicial — superior court races in Arizona are nonpartisan by virtue of the Constitution. Justice of the Peace races can be partisan. We're not altogether sure what Mr. Wolfson intends to do in the future, but he has run for both. But whatever — I'm not sure what nonpartisan means, but we have an opinion in the Montana case saying essentially that — and I don't know whether it's still good law or not. I'd sort of like your views on that — that there is a constitutional right of parties to endorse judicial candidates, right? And that is true in Arizona as well. It's just that on the ballot itself, the judge may not put his or her — Right. It doesn't run as a party member. Yes. Excuse me? The judge does not run as a party member. The parties may endorse, but the judge does not run as a Democrat, Republican, independent, or whatever. Right? That's correct, Your Honor. And the Montana decision doesn't require that there be a partisan designation on the ballot. It just requires that a party be free to endorse someone. That's correct, Your Honor. And as to the question on the ballot initiative, I think Justice Hurwitz brought it out, but also the judicial advisory opinion in 6 — 06-05, which was after the White opinion, specifically does say that judicial candidates may express opinions about ballot initiatives. You mean they could go on TV or on a billboard and be identified as supporting it? I don't think that there's a prohibition on that. What the opinions later state is that a sitting judge who is not campaigning may have an appearance of impropriety if he is publicly and actively supporting a ballot initiative. And here, see, maybe I have a question. And is there a difference between what a sitting judge can do while he's campaigning and what a sitting judge can do when he's not campaigning? As to things that don't have to do with his campaign directly? Rule 4.1 — well, Canon 4 addresses what candidates, both sitting judges and non-sitting judges, can do during the campaign period. And there is a greater protection during the campaign period reflecting the Supreme Court's opinion in White that the voters have a right to know about the qualifications and the judges who are running have a right to inform the voters about their qualifications and their positions on issues that disputed issues of law. So sitting judges — Including — but your position, as I understand it, or maybe it's not, is that that's in the format of their own campaign, but what about in the format of going and endorsing someone else's campaign? Your position is they can't do that, no? That's correct. During the — well, certainly not while they're sitting judges, but not while they're running for office, either a sitting judge or a non-sitting judge. I would remind the Court that as to questions concerning what a sitting judge may do while not campaigning is not before the Court. The earlier panel decision determined that Mr. Wolfson only has standing to raise those issues that deal with non-sitting judges. Was that — was the previous panel opinion correct on that point? We're sitting in bank, and we vacated the opinion. So — I understand that, Your Honor, but I do believe on that particular point that the panel was correct, that it is very hypothetical that Mr. Wolfson will ever be a sitting judge. So his concern, what they were addressing, was the concern about the commits clause. So he wanted to speak out about certain ballot initiatives, but was concerned that he might have to recuse himself if he became a judge. And the panel said that is too hypothetical for us to address that issue. I'm not sure I understand your position. Are you distinguishing between the period of campaigning as to everybody who may be a non-campaign period sitting judge, or are you distinguishing within the campaign period between incumbents who are running for reelection and outsiders who may be running against them? As to the latter, Your Honor, I am not distinguishing between incumbent judges running and non-incumbent judges running. So you would have us treat all judicial candidates for office, whether they're incumbents or not. You think they should be treated alike. Is that right? That's correct, Your Honor. So what is the compelling interest with regard to non-judicial candidates who are not currently judges to not have them, for example, endorsing other people who are running for other offices, if they're not then judges? If they're not judges, they are, of course, running to become judges. So the activity that they participate in during the campaign period may very well affect what happens in the perception. But how would you define the compelling interest? What is the compelling interest? The compelling interest is public confidence in the integrity of the judiciary. It's the appearance of impartiality and independence. If a judicial candidate is linking him or herself. Wouldn't you admit that if it's a sitting judge, it's a little stronger? Because, you know, people are saying, well, Judge so-and-so, and that does, you know, the other person is just a wannabe at that point. Well, what happens with a judicial candidate, I guess, it does prevent a quid pro quo from  So if you have a quid pro quo. Well, what it does is it evens the playing field for the judge. That's correct, Your Honor. But that's not the interest that you're arguing for. I mean, I would hate to be a judge and have someone run against me that had different roles than I would have. And so but there's a little leap that you have to do to for the integrity of the system. Well, and in Davis v. FEC, we know that it's the government cannot constitutionally allow one competitor for an office to have more speech than the person competing for the same office. Isn't there a two-level compelling interest that you're arguing for? You're saying with respect to sitting judges, the compelling interest is the interest that we've been talking about in impartiality and the appearance of impartiality. And with respect to the non-incumbent, the compelling State interest is in having a fair election as to which both sides or all sides have the same First Amendment opportunities. Yes, Your Honor, I think that is a compelling interest as well, but I also think that there is a furtherance of the interest of the appearance of impartiality and independence of the judiciary. As soon as a candidate identifies him or herself as wanting to run for office, the public then associates that candidate with judicial office and therefore has that in mind. And again, when, if he's successful, he becomes a judge, that conduct is relevant. Of course the chair of the Democratic Party decides to run for judge. While he's running for judge, he can't say he's the chair of the Democratic Party and can't have anything to do with the Democratic Party, even though that's his job? He has to resign? I think he would have to resign, Your Honor. I don't think he can run for judge. So what's the strongest case that you have that supports the argument that someone who is not a sitting judge cannot take positions of endorsement? What case do you think most strongly supports that view? I would suggest that both Williams-Ylee and Wursel support that viewpoint. They're both non-incumbent judicial candidates, and the court there, in both courts, said that regulation of that speech, of those judicial candidates' speech, furthered the compelling interest of preserving public confidence in the integrity of the judiciary. I want to ask a question about the breadth of the prohibition against making speeches on behalf of a political organization. So how broad is that? Let me give you a hypothetical. If, for example, the American Cancer Society holds a rally for the cure of cancer and a political party is a cosponsor, must a judicial candidate excuse himself or herself from speaking there? I think it is very context-specific. Well, I gave you a context. So does the way that it's written right now, would that cover that situation? Is it that broad? It's pretty broad. That they couldn't speak along with a political, at a political organization. Right. That they're a cosponsor. It's the American Cancer Society, and one of the cosponsors is a political party, and must a judicial candidate excuse himself? You know, we have the breast cancer month coming up, so what if the Democratic Party joined in on that and then a nontraditional candidate wants to speak there against breast cancer? Can they do it? I think that it might be problematic, depending on the appearance. They could get an opinion ahead of time. What part of the code covers that? I'm looking at the code. Tell me what part of the code would cover that in your view. 4.1 is the one that applies. Is this a political campaign in your view? No, it isn't. So what other provision of the code might prohibit that? We are looking at a prohibition, so tell me where it's prohibited. I stand corrected. I suppose I was thinking about the campaign assessment to a political organization, but there isn't a prohibition about being involved with a political organization. Is this political campaign defined in the code? It is. And what does it say? It's a partisan activity. So being against breast cancer is not a partisan activity? That's correct. Probably both in fact and in definition. But, for example, Rule 3.7, which is not directly at issue here, applies to judges and not to judicial candidates, and it says that judges can't solicit funds for an organization, et cetera, et cetera. But a judicial candidate who isn't a judge could, I gather. Is that right? That's correct. There is a slight difference in treatment between campaigning activity and non-campaigning activity. But I thought you said that William Julley stands for the proposition that non-sitting judges can't solicit funds for an organization. I thought you just said the opposite. What I meant is during the campaign period. As to partisan events. Correct. So even during a campaign, couldn't one of them who's not a judge currently ask for money for a breast cancer awareness week? Yes. Because it's not a partisan event. Correct. But to get back to Judge Raulston's question, is it really possible to treat all of the judicial candidates equally? I mean, if some of them are sitting judges, it seems to me they have some obligations and restrictions because they've already taken the oath and they're already sitting judges. Right? If the candidate has the ability to speak out, that might be one thing, because if we rule in your favor. But I can easily imagine a judge choosing not to do so, because to do so, he or she might have to make a decision that would be up to the judge to choose not to exercise his or her First Amendment rights. That's correct, Your Honor. So to take a risk in the election, they're not going to respond to the challenge. But that would be the inevitable result, it seems to me. Well, it's clear from the code that they can respond to their opponent and correct anything that their opponent might say about them. But what the code is trying to do is, on the one hand, respect the rights of judges who are candidates to be able to effectively campaign, but on the other hand, protect the integrity of the judiciary. And it may very well be that different judges interpret their obligations differently under the code. So it could be, then, a sitting judge who has a really high profile, maybe a longstanding case, where the parties and the judge have invested a lot of time and energy, would be quite vulnerable, because a non-judge candidate could assert a position on this hypothetical hot-button issue. And then the sitting judge, it sounds to me, would inevitably be in the position of having to make a really tough choice to either exercise his or her First Amendment right and respond, because there's an ongoing election, and this person wants to hopefully keep their seat in office, or choose not to, because to do so requires recusal. Is that right? I believe that that would be correct, that the judge would have to make that choice. Counsel, can we go back to the strict scrutiny issue? You heard our conversation with opposing counsel. Your position, I gather, is that strict scrutiny applies? Yes, Your Honor, I would say so. But my question, I guess, is, is it compelled by your reading of Williams v. Lee, either because you can add 3 and 4 and get 7, or is it simply a stand-alone argument, as to which we can't apply Williams v. Lee because there are only 3? What, the lower level of scrutiny was something that we argued previously, and because in Williams v. Lee, I would say I agree with opposing counsel that the narrowest reading of that is that strict scrutiny does apply. So unless the regulation of the personal solicitation, in the personal solicitation ban, is different from the endorsement or the political activities clauses, then I would think that you would be required to apply strict scrutiny. As to the compelling interests, is the compelling interest with respect to each one of the five provisions and issue the same, or is there the compelling interest stronger, for example, in the personal solicitation category, and then weaker in the endorsement, or is it the same all the way through? I think that it impacts it somewhat differently, but that the basic compelling interest is this interest in impartiality and independence of the judiciary, as well as the appearance of that independence and impartiality. But the two are different. I mean, as to the solicitation clause, I mean, you're directly dealing with the possibility of partiality to the people who are giving you money. With regard to issues about speaking out on issues or speaking out on candidates, I mean, certainly speaking out on issues isn't usually understood as a reason for recusal, or not necessarily isn't. And speaking out about parties is not, you know, how many cases actually show up that are specifically about political parties. It's a whole different interest, isn't it? Isn't it an interest in the overall role and structure of the judiciary? Is that not true? Or what is the interest at that point in the other provisions? Specifically, not just words. Well, again, the rules do not prohibit speaking out about issues or about ballot propositions. What the rules prohibit is public support of candidates or opposition to candidates. We're not going on TV about a ballot opposition, a ballot initiative. That's not at issue in this case. I'm not asking you that. Does the rule cover it or not? I don't necessarily. There's certainly no direct prohibition of it. But doesn't the Ethics Committee expressly said that it doesn't cover taking a position on a ballot initiative? Yes, Your Honor. Interpreting the rule as the Constitution of Arizona allows it to do. Correct. So your answer is that no, the rule does not prohibit taking positions on a ballot initiative. That's correct. Okay. And you're relying on Ethics Opinion 0605, is that right? Correct, as well as the comments indicating that. Yes, the commentary. All right. Thank you. I'd like to come back to a question that Judge Graber asked. And your answer to that question, Judge Graber suggested, if I've got it correctly, that if there's a compelling state interest in regulating the behavior of sitting judges during the course of a campaign, that there should then be a compelling state interest with respect to those specific regulations during a campaign in regulating the competitors so as there is an equal playing field between the two of them. And I heard you say, maybe somewhat half-heartedly, yes, and there's something else, too. Did you mean to disavow the argument that Judge Graber gave you, or would you view it as a compelling state interest that whatever restrictions relevant to the campaigning of an incumbent judge should also be put on the non-judge who's campaigning for the same office and the level of the playing field is itself a compelling interest? I would say that it is itself a compelling state interest, given the Supreme Court authority that you can't allow competing candidates to have different levels of speech. The government can't do that. They may come into it with different capabilities, but the government cannot make rules that accord different levels of speech to competing candidates. So what's your position about the sitting judge who has the very controversial law and standing case and the challenger, the non-judge challenger takes a position on whatever the hot button issue is? Should the sitting judge be allowed to respond and take his or her lumps in the election, you know, recuse, or do they have to take the lumps in the election, or how do you see that playing out? Well, I suppose what it goes to is if what the opponent says is something that in order to respond to it, you have to indicate how you might rule on that case, and you may have to articulate things that would indicate, well, not a bias one way or another, but... And hypothetically, you have to do all of that, because I'm trying to make the hypothetical difficult. So let's say all of that is true. I would say that then, given the due process rights of litigants, that the judge has an obligation to honor the due process rights of the litigants, and so in that case, if it requires him to cross over and indicate some kind of bias to respond, then he should either stay silent or recuse. Wouldn't his opponent be prohibited from taking that position? In other words, wouldn't the judge's opponent be prohibited from saying how he would rule on a specific case under sub 10? Yes. In that case, then the non-judge candidate can't have advance notice of what speech he or she is allowed to engage in without knowing what is in the sitting judge's caseload. How does that work? I'm sorry. Well, the non-judge candidate, to follow up on Judge Hurwitz's question, if that speech is dictated by what issues may or might not exist in the sitting judge's caseload in order to level the playing field, that strikes me as entirely unworkable. Well, I think what Judge Hurwitz was suggesting, that given your hypothetical, there was a specific criticism of the judge's decision-making in a particular case. No, no, no. That's not my hypothetical. He's hijacking my hypothetical. My hypothetical had to do with a hot-button issue. It's not a particular ruling. It has to do with a hot-button issue. So I'm understanding that you're saying under White 1 that the non-judge candidate gets to speak out about those issues, right? But a sitting judge might have other obligations, ethical obligations. Correct. Because he or she has taken the oath and has got these cases assigned to him or her. And it just seems to me that in terms of really leveling the playing field, something that's unavoidable is that sitting judge has a big problem and may need to recuse him or herself. That's all. And it may be that there would be some differences there in individual cases. But isn't the great equalizer, in order to maintain public confidence, we shakes the public's confidence in that person as the decision-maker if this issue should come before that person as a judge? I think that is correct. And so it allows candidates to speak out on disputed legal issues, but doing so at the risk that if that issue comes before the candidate, he or she may have to recuse in that event. Or he or she might have to explain to the public why their existing oath doesn't allow them to speak about a certain topic. Correct. But doesn't subsection 10 take care of all that? It's not really an issue here, but it's talking about issues that are likely to come before the court. Correct. That's, yes, it prohibits judges from speaking out about issues that are likely to come before the court. But this prohibits pledges, promises, or commitments. Correct. A judge may speak out about those issues. A judge may not say, and when it comes before me, this is how I will rule. That's an important distinction, isn't it? A judge can say, it is my view that originalism is the way to interpret the Constitution. But a judge can't say, and when I get a Second Amendment case, that will mean I will always rule in favor of the person who wants to bear arms. That's correct. And so here, Mr. Wolfson was permitted to say that he believed that marriage was the union of a man and a woman. But he wasn't permitted to say that if that case came before him, he would rule in that particular way. What's your response to counsel's argument that impartiality means something different in Florida than it means in Arizona? Oh, both the preamble and the comments to Rule 4.1 clearly speak in language that is very similar to the language used in Williams v. Lee. The preamble says an independent, fair, and impartial judiciary is indispensable to our system of justice. The comment to Rule 4.1 says public confidence in the independence and impartiality of the judiciary is eroded if judges and judicial candidates are perceived to be subject to political influence. When I read the distinction in the supplemental brief, and still today, I don't understand the distinction that counsel is trying to make. Arizona has raised that interest throughout this litigation.  Yes, close is good enough. Except in horseshoes and hand grenades, right? A nuclear warfare. Well, it seems to me that what the other side may be asking for, and she may want to say something when she stands up, is to my view, she's asking for magic words, meaning the idea is virtually identical, and what you're getting is sort of feel-good boilerplate language from both states aiming at the same thing expressed slightly differently. Right. She focuses on fear or favor, but that goes directly to impartiality and the language of impartiality and independence. Arizona does describe it a little differently. Arizona does include, as she points out, temperament, for example. It is a slightly different flavor. It may be subsumed because there's that honesty in there, but it's certainly described in different words, right? It's described in different words a little bit, but as long as you have the impartiality and independence as one of the interests, that doesn't detract from the fact that there also is an interest in honesty and lack of impropriety or avoiding impropriety. Does anything in Hewley – obviously, Hewley is directly relevant to the solicitation provision, but does anything – I mean, isn't the – as to the rest of the provisions, aren't we really in white territory more than Hewley territory? Is there anything in Hewley that really deals with that much? In some ways, I would say that the political activities clauses are even closer to getting at impartiality and independence because it's not – Well, you keep saying that, but to me, impartiality, as I said before, means something else. It means ask between the parties, are you partial? And you mean you would go look up whether somebody is a Democrat? I mean, what – how does it have to do with impartiality? Well, of course, the example is if you support a county sheriff or a county attorney and endorse them in their campaign, then the obvious thing – I suppose. What about the senator or state senator? Again, there's an effort – well, what I was starting to say earlier is that when you endorse someone else, that doesn't say anything about the candidate's own qualifications. And so why I said that with the personal solicitation ban, there's a direct – the amount of money that they're able to collect furthers their ability to speak out. With the endorsement clause, there's really very little that – You're saying their First Amendment interest is less, not that your interest is stronger. The First – yes. Well, the white one concentrates on the campaigning ability, the ability to allow candidates to educate the voters about their qualifications. And, therefore, again – and, again, when you're endorsing, you're going to particular candidates who may – and their supporters who may or may be parties before the judge at a later date. Your time has expired. Do you want to sum up, or are you – I would just ask that the court affirm the district court on this matter. Thank you. Thank you. We will hear rebuttal. And why don't you start with Judge Hurwitz's question. Judge Hurwitz, just to return to your question, as requested, you had indicated that it seemed that in the commentary to the rules, comment 14 seemed to suggest that a judge can announce their views, and so, therefore, that should – there is no First Amendment harm that would arise from prescribing that candidate. Okay. So since – now that we agree on what the commentary says, my question is, is there a greater First Amendment harm if you can announce your views and not being able to join the campaign, which is what the rule does prohibit? Is there a separate First Amendment rule that – separate First Amendment interest in speech interest in joining the campaign? That sounds to me like an associational interest rather than a speech interest. I guess I don't see it as a separate interest. I see it as more of a regulating the form of the announcement, and I think that as I've been listening to more questions from this panel, it seems to be, you know, can you announce your position from television or if they're too outspoken. That seems to speak more to concerns about the form of how those views are – But in the announcement in television, it was something sponsored by the campaign, so the judge was taking part in the campaign organization. If the judge were interviewed on television, couldn't he just announce his views? But again, yes, he could, but his ability to participate in a campaign and his participation in that campaign as part of that announcement, I think, again, we're looking at trying to regulate the form of how that announcement has gone about. So we don't want – we'll let you announce your views, but we don't want to let you as part of a campaign or we – that, to me, I think, is a position that the government – a road that the government ought not to be going down. The concern, though, is that the judge has his or her mind made up on an issue before the issue is ever fully presented in a court of law with – or against. In essence, that the deck is stacked against one side or the other because of what they've said. Well, the Republican Party of Minnesota speaks to that. When they recognize the right to announce their views, they address the issue. Judges are prescribed from pledging or promising certain results in a particular case for specifically that reason, that they are closed-minded. But so aren't candidates as well? In other words, we don't want candidates essentially making statements that say so strongly that when this issue comes before me, if the initiative passes and there will be a challenge to its constitutionality, the judge would be expected to rule one way or the other depending on what he or she said during the campaign? Our position is not that a judicial candidate should be able to pledge or promise certain results in a particular case. And so certainly if a judicial candidate were to come out and say as much, we're not advocating that they ought to be able to do so. What we are advocating is that they can state their support on an issue and be part of an initiative campaign. There's no risk of favor. There's no risk of bias for a party. There's no people involved. It's purely an issue. Doesn't the legality, and I can speak to this from experience, but I suspect you can too, that doesn't the legality of campaign initiatives often come before the courts in Arizona? Every two years if you look at the Superior Court decisions and the Supreme Court decisions, there are challenges to this initiative or that initiative under the single subject rule or because of whether signatures were collected correctly or all that sort of stuff. A judge who was part of the campaign, as opposed to expressing her views on whether it was a good idea or a bad idea, isn't there a little bit of a difference there when those issues come before the judge about whether the initiative ought to be left on the ballot? That's really different than whether she favors it, isn't it? If we're looking at the interest of the public's confidence and the integrity of the judiciary, if a judge announces their view on a particular issue or they participate in a campaign as a means by which to announce their view on a particular issue, I don't see a distinction in the public's eye in terms of how that might affect their perception of the judge's ability to... You're out of time, but I have one hopefully short question. What are the sanctions here? I mean, for a non-sitting judge, a sanction is qua lawyer. He can be sanctioned as a lawyer? That's correct, Your Honor. And what about for a judge? A judge would be before the State Commission and would be... I don't know specifically what those sanctions would be, whether it would be a reprimand, removal from office. A range from reprimand, censure all the way to removal from office in an appropriate case, right? I would imagine that those potentials would be available. And they all converge at the Supreme Court. That's correct. Both of them ultimately, that's their... That is correct. Our questions have taken you over time. Do you want to sum up in a few sentences? I do. I briefly would just like to say that the Supreme Court in Davis v. FEC said that leveling the playing field is not a compelling interest. And in conclusion, I do want to just leave us with the final statement from you, Lee, quoting, Judicial candidates have a First Amendment right to speak in support of their campaigns. How they choose to speak must be left to them. Thank you, Your Honors. Thank you all for your arguments. The case will be submitted for decision, and we will be in recess.
judges: Thomas, O'scannlain, Graber, Fletcher, Gould, Berzon, Tallman, Rawlinson, Callahan, Christen, Hurwitz